We'll hear argument next in Case 24-5774, Barrett v. United States. Mr. Larson. Mr. Chief Justice, and may it please the Court, possessing a gun in violation of 924C1A is a lesser-included offense of using it lethally in violation of 924J. The offenses are therefore the same for purposes of double jeopardy, meaning there's a presumption that Congress did not intend two punishments for one fatal shooting, and this presumption controls unless there is a clear indication that Congress wanted to double punish, but there isn't any. As Court-appointed amicus acknowledges, 924J says nothing about punishment under both statutes, and as detailed in our briefing, neither does 924C. On the contrary, while 924C is very clear that its punishment applies in addition to that for the underlying felony, it does not say its punishment applies in addition to that for a lethal shooting in violation of 924J. And the reason for this, as Your Honors explained in Laura, is that Congress designed 924J's penalties, which include life in prison and even death, to account for the seriousness of the offense by themselves without incorporating penalties from subsection C. Indeed, as the Court also noted in Laura, when Congress wrote 924J in 1994, it specifically considered, but rejected, a proposal to impose a penalty that would impose multiple punishments for a fatal shooting. Only in 2005 did Congress write 924C.5 to cumulatively punish fatal gun use, but only where armor-piercing ammunition is used, and that is not this case. In short, Your Honors, as 924C.5 confirms, Congress knows how to order multiple punishments for a lethal shooting when it wants to. It has not done so here. I welcome the Court's questions. So are you saying that all of 924C.1 is a lesser-included offense of 924J? So not necessarily, Your Honor. If you're referring to things like machine gun use or use of a silencer, we recognize that question isn't presented here. We addressed it in one of our briefs, the scenario of voluntary manslaughter with a machine gun. And we say maybe those are different crimes, maybe they're not. What about 924C.1A.2 and 3? 1A.2. That's 1. 2 is brandishing and 3 is discharge. Yes. So the same answer to our situation involving the machine gun. So perhaps this could go either way, Your Honor, in that scenario, which is not, of course, the case here. Strictly speaking, you know, brandishing is a requirement under C. But brandishing may or may not be an element of 924G. This Court, however, explained in the Whelan case where there was a lesser-included offense of rape and a greater-included offense of murder, felony murder. The Court said, well, strictly speaking, rape is not an element of felony murder. But it is one way you can commit felony murder. And in this case, the Court said in Whelan, that is the lesser-included offense. So it may be, Your Honor, that in a case where brandishing is shown, discharge is shown, use of a machine gun or silencer is shown, and a jury convicts on J, they will necessarily find that's the lesser-included. Of course, that's not the posture here. We have simple possession, which is always a lesser-included offense of lethal use. Your whole point was that Congress didn't speak clearly enough here, but C.1.D.2, as you know, because Amicus emphasizes it. I mean, I don't know how that could be clearer. No term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person. I mean, that's very clear, and it starts with notwithstanding any other provision of law, indeed. Notwithstanding any, any other provision of law, no term of imprisonment imposed shall run concurrently. Indeed, Your Honor. So the operative language to activate this section is that a term of imprisonment has to be imposed under this subsection. That is the question here. May a term of imprisonment be imposed under C if someone is punished under J for the same offense? That's the question here. And as to that question, C.1.D.2 is silent. It doesn't address it. And as the Court has explained, silence cannot be a clear indication to double punish. Also, Your Honor- What would be necessary, do you think, to make that clear? What would be necessary would be something like what appears elsewhere in the statute. We have two examples in 924C of where Congress has ordered multiple punishments. One, it said if you possess a gun, you get a punishment for that in addition to the underlying crime of violence. It's also in C.5 said, if you use a gun loaded with armor-piercing ammunition to kill, you're getting a lot of punishment. C.5 came in much later. I mean, this was in 71, right? 924C.1.D.2 came in? Yes. And even when it came in, Your Honor, in Simpson and Busick, this language was in the statute. And this Court said in Simpson and Busick that this language, requiring a minimum, requiring it to be consecutive, was not sufficient to constitute a clear indication. That's why Congress had to amend the statute to make it crystal clear that it wanted to double punish both possessions. You want it to be in both 924J and in 924C, the provision that it can't be concurrent? No, Your Honor. There is no provision in either of these statutes addressing the scenario here. And is that because you are distinguishing two convictions versus two punishments? In other words, it seems to me that this provision that Justice Kavanaugh is pointing to is about whether you can run the sentences that have been validly determined relative to two separate convictions, whether you can run those or have to run those concurrently. But your question is, can we have two separate convictions under these circumstances? Precisely, Your Honor. Right. So that's why this doesn't have anything to do with that. Precisely, Your Honor. The question that's at issue with this, under double jeopardy, can we have two separate convictions for the same offense, for the same conduct, not whether the sentences that flow from those two separate convictions can be run concurrently or consecutively or whatever.  Well, I thought we talked about that in oral argument in Laura. We foresaw, I think, exactly what was going to happen at the oral argument in Laura about this. Well, Justice Jackson, you're absolutely right. We don't get to sentencing unless there's a valid constitutional conviction imposed. That is the question in this case. Can someone be convicted under C-1 and also J for the same crime? And nothing... So can you explain, and I think maybe this would address Justice Kavanaugh. He'll correct me if it doesn't help. What is it in 924C that requires, that permits the two convictions to run consecutively? So I think you're saying an intent to allow for dual convictions is what you need to have Congress show and not speaking only to the length or timing of a sentence, correct? You need more than length or timing. So what is it in 924C that permits a dual conviction? Right. The dual conviction in 924C1A is for gun possession and the underlying crime of violence or drug trafficking offense. Okay. And Congress is very clear you can stack those punishments. And if you do, in fact, impose a sentence under C in that scenario, that sentence will have to run consecutive to the underlying offense. That is not this case, Your Honor. All right. But if it's dual convictions, generally you have a drug offense for carrying a firearm. You get a sentence for that. You have to run this consecutively. What is it in the statute that you say makes it clear that it's speaking not just about punishment, but about conviction as well? Well, when it talks about punishment, conviction, sentence, these words in the case law are kind of used interchangeably. The idea under the double jeopardy clause is that you can't be punished twice for the same offense. We know here we're talking about one offense. So the question is, is there any clear indication that Congress wanted someone like Mr. Barrett to get multiple punishments? And I think it's important to remember that when Congress wrote 924J, the statutes didn't look like they look today. In 1994, 924C's penalty was a fixed five years. It was not a minimum. So Congress found that insufficient. They're like, if you kill someone, you need more than five years in prison. It wrote J to allow for the death penalty and up to life in prison. It rejected the proposal that a fatal shooting should be subject to C's multiple punishment regime. And this Court explained in Laura, it designed J to account for the seriousness of killing by itself. There's no indication that Congress thought someone sentenced to death under J or up to life in prison should get five years on top. What's the point of that? There may be something strange nowadays when we look at C saying it's a minimum of five and, you know, why would Congress want to have a minimum for gun possession but not fatal use? But this Court unanimously rejected that argument in Laura. That was the government's argument there. If you have a minimum for possession, you've got to have one for lethal use. This Court said no, there's no indication in the statute of that. Congress didn't clearly indicate that that's what it wanted. Well, when we interpret what a particular provision means today, don't we have to look at the entire, all of the relevant provisions that are in place at the present time? Yes, Your Honor. And I think it's very telling that in the 30-plus years since J was written. In other words, we have to, you know, we have to assume that it's all meant to fit together somehow, right? I think it's fair to look at the passage of time, Your Honor, and I think that works in our favor because there's no suggestion by anyone here that in 1994, Congress wanted someone sentenced to death to get five years on top. It may seem odd now that five is a floor rather than a fixed term, but Congress has had 31 years, Your Honor, to address this problem if it is a problem. Congress has decided it's not a problem. And why? Because J is enough on its own to punish someone who lethally uses a con. Do you think that a clear congressional desire to provide multiple punishments for a greater and lesser included offense can be inferred from the penalty scheme? Well, I think — Can it ever be inferred from the penalty scheme? If — so the penalty — Your Honor says the penalty scheme. So every statute has a penalty. Suppose that — suppose that the maximum penalty for the greater offense, in the sense that it includes more elements, is one year, but the maximum penalty for the lesser included offense, in that it has fewer elements, is two years. Do you think it would be — that a clear congressional desire to have multiple punishments in that situation could be inferred? No, Your Honor. And there is a case that we found after briefing by Judge Posner. It's U.S. v. Peel, P-E-E-L, Seventh Circuit, 2010. There, the judge explained, the lesser included offense was obstruction of justice with a 20-year maximum. The greater offense in that case was bankruptcy fraud, which has a five-year max. So it's exactly the scenario that Your Honor has just posited, this weird situation where the greater offense actually has a lower penalty. Judge Posner says, same offense, no clear indication to double punish. I'm sending it back for one of them to be — one conviction to be vacated. Well, are we bound by that decision? No, but I think it's a good example. Then why does it make sense? I think it makes sense because — Why does it make — why does it make sense? I think it makes sense, Your Honor, because it's entirely in line with this Court's consistent jurisprudence that because courts don't decide punishments, it's Congress that does so. Courts have to be very careful before they decide that Congress wanted to pile on and double punish one crime. It needs a clear indication. And the fact that two different statutes may require punishment, may require even minimum punishment, or even have clauses saying notwithstanding any other provision of law, don't suspend the sentence, I'm describing now the scenarios in Rutledge. This Court said that is not enough to be a clear indication to double punish. There must be more, and here there is no more. Thank you, Counsel. What exactly, short of express language, would you say allows multiple punishments? So the two examples that both we and the government cite in C, namely C1a and C5, there's language. It's not the same language. You can use different language. It clearly indicates there that Congress did want multiple punishments. And I think we do look to the text. That's the best expression of Congress's intent. And here, there simply is no text indicating a wish to double punish in this scenario. Thank you. Justice Thomas? Justice Alito? Well, just out of curiosity, suppose there is a person who is committing a crime, and this person is very well versed in the statutory, in the criminal code, and in our double jeopardy jurisprudence. And so this person commits an offense that has two elements, A and B, and the maximum punishment for that offense is five years. And the person says, wow, if I get caught and convicted, I don't want to go to jail for five years. But I know that if I commit two other elements, C and D, and the maximum penalty for that offense is only one year. So let me go ahead and commit the greater offense. Does that make any sense? So such a skilled defendant may engage in that conduct, Your Honor. There are ample safeguards in place to protect against any injustice. In that scenario, the person would be tried and convicted of both offenses. And if they are in fact the same and there's no clear indication to pile them on top of each other, he would be subject to punishment under either one. If the government or the court feels that they need to use the statute with the higher maximum, he'll be punished under that one. And that's the situation here, Your Honors. If Mr. Barrett is ultimately punished under C instead of J, he still faces up to life in prison. And the government has pointed to no scenario in which someone punished under C, or rather under J, gets off or gets a light sentence. Well, what I'm getting at is that under your view, a defendant who commits murder while violating 924C can be sentenced to less time than a defendant who does not commit murder while violating 924. Right. Isn't that right? So, yes, Your Honor, and it can be, I think, is the key phraseology there. So in addition to the fact that Amicus has cited no actual example of this ever happening, there's also the safeguard, in addition to what I've discussed, of appellate review. If some crazy judge says, I'm giving you a day in jail for killing somebody, you can bet there's going to be a government appeal, and a reviewing court is going to most likely find that unreasonable. There are multiple safeguards here. No injustice is going to result from our reading of the statute, which is the only reasonable reading given the text here. Justice Sotomayor? There is another situation in which we found that the sentences should be running consecutively, and that's Garrett. Oh, yes. And Garrett, the RICO, versus the substantive crime, correct? And so distinguish that case. Garrett could not be more unlike the scenario here, Your Honor. The two crimes there was literally one on one day, an importation of marijuana on one day. The other crime was a years-long, multi-state, spanning all of the coasts of the country, continuing criminal enterprise. This Court looked at the statutes, said Congress could not possibly have intended that if you import marijuana on one day, you then get out of jail free card for the next several years of your continuing criminal enterprise. That is and in the Court's decision, or rather discussion of the situation there, it contrasted that scenario to the one here, a single course of conduct. Here, J requires that the shooting occur in the course of a violation of C, and that's what happened. Mr. Doar shot Mr. Tufalo within seconds or minutes of robbing his compatriots. This was not something spanning years or months. This is one course of action. The classically simple situation. Going back to Justice Alito's question about does it make any sense that the lesser punished crime would Congress would want that one to control, that wasn't the case when the statute was passed, correct? Absolutely right. So we have to discern intent at the time the statute was passed, correct? Yes. I do think it's fair, as Justice Alito indicated, to look at what's happened since then. But looking at that only helps our position, because Congress has had over 30 years to change this scenario if it felt like something unjust. And they did it in one situation. That's right, for armor-piercing ammunition, not the case here.  Correct. Justice Kagan. Justice Gorsuch. I had a question from a totally different direction, Mr. Larson. So everybody's litigated on the premise that Congress can double punish for greater and lesser-included offenses if it speaks clearly, but it must speak clearly. Where does that presumption come from? It comes from a couple of places. Your Honor's talked about this in the Whalen decision. Number one, separation of powers. Courts don't write laws punishing criminal conduct. They don't set the penalties. Congress does that. That function by the Constitution is committed to Congress. So courts are very careful. Well, we normally interpret statutes without a thumb on the scale. And you ask us, everybody asks us to put a thumb on the scale. Where does that thumb come from? Yes, the presumption, right. Because we're afraid of violating the separation of powers, and we're also afraid. Is that lenity? Are you just afraid to utter the word? No. I'm a great fan of lenity. And I believe Your Honor is, too. Maybe not everyone in the room is a fan of lenity, but I am. But putting lenity to the side. It has to come from somewhere. Yes. It comes from the historical practice that, historically speaking, legislatures don't double punish one crime, right. And also, constitutionally, it's the legislature that decides on the punishment, not a court. So a court, before it veers out of its lane and says, you have to double punish this person, there better be something very clear from Congress indicating that that's allowed. Because as the Court said in Whalen, if we get this wrong, we violate not only the separation of powers principle, but we also trench especially harshly on the individual freedom aspects that are protected by the double jeopardy clause. And this Court has sometimes said the presumption. But in other cases, it said there is no double jeopardy prohibits two punishments for one offense. And that includes greater and lesser. I'm thinking of Pierce. I'm thinking of Shiro. How do we reconcile, like Hunter on the one hand and those cases on the other? Well, Hunter was just Missouri's version of 924C. You know, if you commit a crime with a gun, you get a punishment for the gun in addition to the punishment for the underlying crime. Nothing in Hunter speaks to the situation here. Well, I'm wondering, Hunter was issued during the Grady era when we treated Blockburger as a tool of statutory interpretation and therefore kind of a presumption, if you will. But Dixon overruled Grady, right? And so I wonder, you know, is Hunter still good law or is it Shiro and Pierce? And let me add on to that. You know, the possibility of punishment, dual punishments for greater and lesser included offenses really wasn't possible for much of our history because you didn't have joinder of criminal offenses. And so necessarily, once you try one, you're done. You try the greater and you're done. And there is no opportunity for double punishment. So I'm just wondering what you make of all of that. Well, historically speaking also, Your Honor, most felonies resulted in losing their life.  Yes. So this question wasn't, you know, as present as it is nowadays. But the Court has consistently adhered to the Blockburger rule for over 100 years. Even in Blockburger, it cited a case from 1911, citing a Massachusetts case from the 19th century. The Court has had many opportunities, it's observed in Rutledge and other cases, to abandon this rule, and it hasn't. And it's just a presumption. We acknowledge that. The presumption can be overcome, but that's what's missing here, Your Honor. I'm wondering, why can the presumption be overcome? Because the Court has decided that despite the double jeopardy clause say, you can't be punished twice for one offense. We have one offense here. And that's the funny thing that I also, you know, discovered in this case, Your Honor. Despite those plain words of the double jeopardy clause, the Court has consistently understood that to be a check on courts and not on the legislature. Because punishments can be whatever Congress says they are. Justice Kavanaugh? Well, the lower, the Second Circuit here, I mean, I feel unfortunate position they're in, because they're trying to interpret Laura, right? So you talk about 31 years. They're interpreting Laura, and they say, after Laura, where we said that Congress specifically chose to locate 924J outside 924C, they're separated by several unrelated subsections. We said, this reinforces the conclusion the Second Circuit said that Congress intended to create different crimes subject to different penalty schemes. 924C, focusing on the firearm. 924J, focusing on the death caused by the use of the firearm. And again, that was discussed at oral argument in Laura. In fact, the government cautioned us against not answering this question in the way that the Second Circuit ended up saying, and now we're back. So Laura's got to be part of your analysis here. How do you explain Laura? Laura favors us, Your Honor. Why? Because it's odd that the Second Circuit said, we're kind of compelled now by Laura to reach this conclusion. You think that's odd? OK. I think it's odd, and this is why, Your Honor. I don't think it's that odd, but anyway. The reason I think it's odd, Your Honor, is because this Court said that our position in this case aligns with Your Honor's ruling in Laura, right? This Court said, you know, J does not incorporate these penalties. Congress wrote J to punish a killing. The penalties it set out were sufficient in themselves. It didn't want to replicate. It didn't want to pile on. And although the precise question here was reserved, Your Honor, whether these two crimes are the same for double jeopardy purposes, there is no dispute among the parties that they are the same. So the only question is, is there a clear indication? Is there special authorization, to use the phrase in Whalen, from Congress to double punish the one fatal shooting here? And there simply isn't. Amicus has not pointed to anything saying so. Well, I think they've pointed to, in 1994, when Congress comes in with J, they already know that 924C1D2 already says that any new punishment will be consecutive. So if Congress knows that in 94, they know they don't have to put something in to make clear that it's double punished. It's already, by definition, going to be double punished, given what that already says. Correct? C1 — no, Your Honor, respectfully. C1D2, as Justice Sotomayor was describing, is an instruction on how a sentence should run if imposed under C. That's the question here. If we assume — You said the question was an intent by Congress to double punish. That's correct. So did Congress want a sentence to be imposed under C, along with one under J for one crime? That's the question to which C1D2 says nothing. And finally, Your Honor, if we presuppose C1D2 applies here, we presuppose the answer to the question. Last, the Second Circuit also noted that the district judge said he was going to do a 50-year sentence regardless here. The Second Circuit can deal with that, I suppose, even if you prevail. Yes. And just to be clear, you know, Laura came up while we were waiting — while we were litigating Barrett in the court below. So we filed supplemental briefing based on Laura. And, you know, the district judge rejected our argument given circuit law at the time, but he specifically told Mr. Barrett, you know, if I'm wrong, you'll be back here for a new sentence. Right. And that's why the Second Circuit didn't find it harmless. So we don't know what the judge will do on remand. We don't. Yeah. Thank you. Justice Barrett. Justice Jackson. So can I just follow up on the Laura clarification here? I guess Justice Kavanaugh makes a point about the Second Circuit believing that Laura compelled its view. But I guess as I understand your argument, you are saying that Laura signaled that Congress intended Jay's punishment to supplant C, not supplement C. That the fact that there was a separate punishment scheme in Jay, but the elements were the same because they were overlapping, meant that where the Jay scenario occurred with the additional element, Congress meant for it to be the punishment scheme that you used in that scenario. One punishment for one crime, Your Honor. Yes. The fact that there are different statutes here, you know, C versus Jay, that was a feature of all of Your Honor's cases. That was the situation in Wayland. That was the situation in Rutledge. They were different statutes. They had different penalties. Didn't matter. They were the same offense for double jeopardy purposes. And because there wasn't a clear indication to double punish, this Court said no double punishment. And going to Justice Alito's questions about the Peel scenario, I guess I didn't understand that odd circumstance to be presented on these facts, because I thought that Jay allowed for additional punishment. In other words, that we didn't have a situation in which Jay was capping the punishment lower than C would allow. Is that right? That is correct. The only difference is, you know, in this particular case, under C, the minimum is 5 years. No one thinks Mr. Barrett is getting 5 years. Right. And that's because the minimum is not really at issue in a case like this when you're talking about death. I mean, what we care about is the maximum in a situation in which the harms and the offense is so egregious, correct? That's right, Your Honor. And justice can be done under either one of the statutes here. The simple point is that convictions cannot be entered under both statutes. Right. And doesn't it have to be done? I mean, aren't sentencing judges also bound by other statutory provisions that require them to provide sentences that are sufficient but not greater than necessary, that avoid unwarranted sentencing disparities? So it's not even realistic, I think, given the sentencing judge's other obligations, that you would be in a situation in which a sentencing judge would sentence someone who had used a gun to a fatal result less than someone who had just used a gun, correct? I agree, Your Honor. And that's why AMCUS has cited not even one example of that ever happening. Thank you. Thank you, counsel. Ms. Brown? Thank you, Mr. Chief Justice, and may it please the court. Section 924C1A is a lesser included offense of 924J, which triggers the Blockberger presumption against cumulative punishments. Nothing in the statutory text, structure, or history rebuts that presumption. The text points in the opposite direction. Congress expressly authorized cumulative punishments for 924C and its predicate. But when Congress enacted 924J and made 924C the predicate, it omitted that language. That different text indicates a different intent. The Court of Appeals focused on 924C's mandatory minimum and consecutive sentencing provisions. But those provisions address the proper sentence after conviction, not whether a defendant can be convicted under 924C and another provision. AMCUS also relies on structural arguments that 924C and J involve different harms, subsections, and penalties. But 924C's predicate offenses share those features, yet Congress specifically authorized cumulative punishments there. And Congress's history with 924C confirms that it understood the clarity this court has required to authorize cumulative punishments. Because there's no clear indication, Congress did so here, the Blockberger presumption controls. I welcome the court's questions. Are you approaching the point where you're going to require a clear statement rule? No, Your Honor, and we resisted that implication in our reply brief as well. We don't think that this is a requirement that there has to be language in the text of the statute. We agree with the court's decision in Garrett, where the court held, looking at the statutory text along with the structure, the context, the history, that cumulative punishment had been authorized. And we think that that same analysis should apply in every case. It is a statutory interpretation question, and the court should take account of the full toolkit for statutory interpretation in that instance. Does your position differ from Barrett's in any meaningful way? So, I mean, I think that to the extent that Barrett was suggesting that there might be some kind of clear statement rule and relying on the sovereign immunity decisions, which do, I think, require some kind of heightened, some kind of language specifically in the statutory text, we do resist that. There is a part of petitioner's opening brief that discusses lenity. We don't think that the rule of lenity analysis should be applied here either. But as far as the construction of the statutory text itself, I think we're aligned. Can you take me through the history of how the government got here? Because in the oral argument in Laura, it was explained that if the court disagrees with us on this, and the court did disagree, it should say that these are separate offenses for purposes of block barter because for the reasons I was just noting, it really makes no sense to have one offense. Okay? That's the government's words. And then, and I specifically asked then later how we should write the opinion and to avoid this problem. And the government lawyer very succinctly and clearly said the court should also make clear that because of the intertwined relationship to the two questions, these are separate offenses for block barter. Now, that was ultimately left open. The Second Circuit, I think, reasonably, debatably, but reasonably, read Laura as supporting what the government was saying we should have made clear. So, what happened then? So, our argument in Laura was essentially that the statutory construction question that the court was facing there, whether 924G incorporates all of 924C, including its penalties, we thought that that was intertwined with the double jeopardy question and that those two questions should rise and fall together. And we also thought that one reason that our interpretation was the better one was that otherwise you would have these implausible results where a 924J offense could be punished, could receive a lower punishment than 924C. And I think that the court in Laura rejected two of those points. It rejected the idea that the statutory analysis in Laura rises and falls with the double jeopardy question. The court expressly said that its analysis there was consistent with or could be consistent with the government's longstanding double jeopardy position. And then the court in Laura went on to explain that it didn't find the possibility of 924J having the ability to be sentenced at a lower punishment than 924C implausible because instead of applying these mandatory minimums or this consecutive sentence mandate, Congress in 924J chose a different approach to sentencing. And that approach is the kind of standard approach that Congress uses for murder and manslaughter offenses where instead of constraining judicial discretion through the use of minimums or consecutive sentence mandates, Congress goes in a different direction. It authorizes sentences up to the death penalty for murder, any term of years, life imprisonment, and the same penalties in section 1112 that apply to manslaughter offenses in other places as well. And the court expressly said in Laura as well that it viewed there to be indications from the statutory text that Congress intended for 924J to take account of the seriousness of the offense without incorporating the penalties from subsection C. So because of that, I think we decided after looking through and analyzing the decision in Laura that our interpretation for double jeopardy purposes was still the better interpretation of the statute because I think the court had rejected the kind of premises that we had built into the analysis. Okay, that's helpful. In overcoming the presumption though, can you look at, and this is Justice Alito's question from before, whether Congress has specified that they should not be concurrent? So I think that that could be some kind of indication in certain circumstances, sure. They were, it said in both provisions. That they're consecutive sentences. So I do think that a consecutive sentence provision is, as my friend said, an indication of how the offense should be sentenced and not necessarily an authorization for the punishment in the first instance. I think the best way to see the distinction between those two is to compare the language in 924C1A that does authorize cumulative punishments with the 924C1D2 language. And so the language that we think is the authorizing language is on page 1A of our appendix and it's that it says that the punishment should be in addition to the punishment provided for such crime of violence or drug trafficking crime. That's good enough. That's the authorization language that we see here. That is certainly good enough. That's similar language to what Congress used in C5. In fact, it was broader in C5 and said that punishment should be in addition. If that's good enough, couldn't Congress, and I'm sorry to prolong this, but if that's good enough, couldn't Congress in 94 when they're putting J in think, well, we don't have to put in an addition because it already makes clear in 924C1D2 that no term shall run concurrently. I mean, that just seems as a matter of English language. Those two things seem to me the same. And if you've conceded that the first in addition to would make it multiple offenses, in Congress in 94, yeah, they could have gone through the exercise. But I think, you know, they read C1D2, it's like, yeah, of course, no term of imprisonment, notwithstanding any other provision of law. So again, I think that C1D2 is focused on the different question and that's the question of when you have a sentence, how is it structured with other sentences. I guess that's, but you've already conceded, and conceded I don't want to use, but in addition language, punishment in addition would be good enough. The punishment in addition would be good enough if it were specific to the offenses at issue here. But in C1A, it's only authorizing cumulative punishment for the C1A offense and its predicate. Is that because you're reading punishment to mean conviction? Punishment, we think, does include both the conviction and the sentence, and that's consistent with what this court held in Ball. In that case, the punishments were, the sentences themselves, excuse me, were concurrent sentences. And so the government had argued that it was a harmless error for double jeopardy purposes because you were really only serving the same time you would serve otherwise. The court in Ball said that that is incorrect for purposes of double jeopardy. The conviction is part of the punishment and that is its promise, as well. Okay, but we don't have the word punishment in the D subsection, right? That's correct. In the D subsection, we're talking about the sentence, no term of imprisonment shall be imposed to run concurrently. And you only get to the sentence after you have the punishment-slash-conviction. Correct. And so that's why we see the authorizing language in C1A as doing the work of authorizing cumulative punishment in the specific instance in which the offense is the C1A offense and its predicate offense. And if that — and you're saying we would have needed that kind of language in the J scenario in order to arrive at the same — Yes, that's correct. And if you thought that the C1D2 language were sufficient to authorize cumulative punishments on its own, then that would mean that the language I was just pointing you to in C1A would be superfluous. And that's a superfluity that would have existed at the time Congress was enacting  Right, but I mean superfluity is usually defeated by notwithstanding any other provision of law. But I take — I understand your argument on that and I understand Justice Jackson's point. I think the Second Circuit was quite reasonable in what it did in the wake of Laura. Let me ask you another question. Does this matter from the government's perspective in terms of sentences that will actually be imposed in the real world in cases of this nature? So I think likely not in practice. That's why I assume you're where you are. The government is going to have the ability to dismiss convictions or dismiss the guilty verdicts that it gets on certain counts before sentencing happens. And so it can have the ability to choose, I think, which of the counts the sentence is imposed under. And that might take into account the sentencing exposure that we think is going to occur under either J or C, and we can choose which one we think is the more appropriate under those circumstances. Do you think that there are cumulative punishments authorized for both J and the predicate offense? We don't, no, because there's no language in 924J that authorizes those cumulative punishments for the predicate offense of C or C's own predicate. It's like — I really meant like C's own predicate. Correct, yes. So you think your position is consistent all the way through. We're going to make you have language, and because there's no language for the original predicate offense, let's say a robbery or something, the cumulative punishment is not authorized. We think that that is the necessary implication of the language in the text of the statute here. If Congress had put J into subsection C, then, of course, that language authorizing punishment in addition to the cumulative offense would apply to that part of the subsection as well, but because it put it in its own subsection, that introductory language just doesn't apply, and it is also a lesser-included offense, so the same analysis that you have here would apply there as well. Okay. I did want to address just a couple of the kind of results-based or anomalies that Amicus has suggested might occur under our interpretation, and especially with respect to Justice Thomas's earlier question about the machine gun hypothetical. We believe that under that hypothetical, these would be two separate offenses for purposes of Blockberger because then both would have an element that the other would not, and Congress can indicate an intent to authorize cumulative punishments by adding elements to the two offenses that would make them separate offenses for purposes of Blockberger, so we don't think that the analysis here would apply in the same way to 924C1B offenses in that same way. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Hill? Justice Kagan? Justice Gorsuch? You know exactly what I'm going to ask. The government acknowledges that there's a presumption that we're not doing our normal statutory interpretation here. There's a presumption against two punishments for one double jeopardy offense. Where does that come from? I think it is largely a factor of the courts presuming that Congress generally doesn't intend to authorize cumulative punishments for the same offense under Blockberger.  That's just repeating the words back to me. Why? Why do we presume that? I think originally there were some early cases that did suggest that under the double jeopardy clause, the double jeopardy clause applied to cumulative punishments as well, and so there was this form of constitutional avoidance. In later cases, the court made very clear that the constitutional analysis and the statutory analysis collapse into one another. As long as Congress has, in fact, authorized it, then that's fine and we think that that's sufficient. Let me stop you there and just say, I think you've got two possible answers. One is lenity, which is rooted in the separation of powers and the presumption of freedom,  And I took that to be Mr. Larson's answers after a while. The other answer might come from the double jeopardy clause itself, which after all says you cannot be punished twice for the same offense, in which case it's not a presumption, it's the law. Now, I know we said it's a presumption in Hunter, but Hunter was back when we were treating Blockberger not as authoritative under the double jeopardy clause, but as a tool of statutory interpretation. We've rejected that since in Dixon. We overruled Grady. And since then, we've said in Shiro and Pierce, you can't have two punishments for one crime, two sets of punishments. Now, of course, a punishment might include a term of imprisonment and supervisory liability, but you can't have two sets of punishments for one crime. So we've spoken out of both sides of our mouth on this. Would you object to a footnote at least acknowledging we've spoken out of both sides of our mouth on this and applying the presumption anyway? So we certainly don't object to applying the presumption as the Court has done in all of these cases. I would push back a little on the idea that we think that that – or the idea that this is compelled by the double jeopardy clause itself. Or at least our precedents. I mean, would Pierce and Shiro say it? Sure. I think if you were going back to original principles in the double jeopardy clause, it actually – You might be shocked to hear I'm interested in that. I am somewhat unsurprised. But it does refer to being twice put in jeopardy of life or limb, not to the punishment.  Yes. For the same offense. But Congress, of course, can define offenses however it chooses to do so. It can also define punishments. But once you've got one offense, you get one set of punishments is the natural conclusion from that text. I think – And we have said that twice. I think what Justice Scalia said when he was looking at the original meaning of this is that, in fact, it was – the double jeopardy clause should apply to successive prosecutions but not to cumulative punishments. But that's what – I agree with that, right? And his point was, well, there might be multiple punishments for one offense. And that's fine. And I – of course, fines, imprisonment, supervisory – but what is a successive prosecution? Through most of our history, you couldn't have a successive prosecution. There was no joinder of offenses. But now there is, and we use Blockburger to tease it out, and here we have, as you concede, one offense. One offense. Forget about J and C. There's one offense. Why isn't the natural implication – again, I'll leave you alone after this, I promise. The natural implication in our precedents that say you get one set of punishments, the obvious implication, or at least we should acknowledge the tension between our cases on this, which speak out of both sides of their mouth. So I – again, I don't think we would object to any kind of, you know, footnote that suggests something like that that could be revisited in future cases in which the issue is briefed, but we would encourage the Court to continue to adhere to the precedents that do apply the Blockburger presumption and that do acknowledge that Congress has the authority to punish in this way. Thank you, Ms. Brown. Mr. Kavanaugh? Justice Barrett? Justice Jackson? Thank you. Thank you, counsel. Mr. McCloud? Thank you, Mr. Chief Justice, and may it please the Court. Petitioner and his crew used guns to rob Gamar DeFala. That robbery violated Section 924C. When Mr. DeFala resisted, one of those guns was used to murder him. That murder violated Section 924J. The Second Circuit correctly held that Congress intended Petitioner's separate violations to be punished separately, subject to the sentencing schemes of both statutes, not one or the other. Text, structure, and history support that conclusion. Petitioner and the government disagree. They say that if Congress wanted to authorize cumulative punishment, Blockburger required it to speak more clearly. But this Court has already rejected attempts to convert Blockburger from a rule of thumb into a conclusive presumption. Precedent also shows that there's no one-size-fits-all approach Congress must follow in this area. Sometimes it's true that Congress says punishment under one statute is in addition to punishment under another statute. But other times, like in Garrett, Congress makes its intent clear through statutory structure and purpose, creating separate offenses targeting separate evils. Here, Section 924C's consecutive sentence mandate makes clear that Congress wanted that provision to impose additional punishment on top of the punishment a defendant received for any other offense. And after Laura, Sections 924C and 924J are undoubtedly different offenses. On top of that, this Court typically assumes that Congress acts rationally. But Petitioner's and the government's interpretation means that the way to avoid Section 924C's otherwise unavoidable mandatory penalties is to kill someone. Congress did not intend that irrational result, and the Constitution doesn't require it. This Court should interpret Section 924C and 924J to complement each other, not to conflict and affirm the judgment below. I welcome the Court's questions. Wouldn't you have an easier argument for the — for 924C1A2 and 3 than you would for 1? I think that's right. I heard my friends on the other side concede that they now view those as establishing different offenses that would not be subject to the double jeopardy bar. I think that with respect to the statutory text, the argument is fairly similar. It is true that there is use of the in addition to language in C1, but as we pointed out in our brief, this is not a magic words requirement. I heard Petitioner's counsel suggest that Congress had made it crystal clear in C1A by using the words in addition to. But the standard is not whether Congress was crystal clear. It's whether it was clear. And I think it is clear from the structure and from the purpose and the history of these provisions that Congress viewed C as imposing additional mandatory punishment on top of any other punishment that a defendant received for a relevant offense. Isn't the question here, excuse me, whether the defendant can receive additional punishment under J? I mean, fine, C might have been intended to be stacked, C, but I thought the issue before us today is whether you can punish under J given the Blockberger test and the relationship between C and J. So, Justice Jackson, I have three responses to that question. The first is, when the Court has looked at this double jeopardy question in the past, it has not typically asked whether there was an authorization for a cumulative conviction. So in a case like Whalen, which is a very good case for Petitioner, the Court asked whether there was an authorization for a cumulative sentence. And that's exactly the same way that Petitioner phrased the question presented in his petition. He said, can he get two sentences for his two convictions? Isn't that just sort of, you know, language differences? I mean, there is a fundamental understanding that the double jeopardy clause is about the punishments, the United States says, you know, punishment, I say conviction, versus the sentence. Well, I think that the sentence is a form of punishment. It is, in fact, probably the most critical form of punishment in the court series. I understand, but the double — you're not raising a double jeopardy problem when you say that I have — my sentence has been run concurrently or consecutively. You're talking about something different than the core constitutional mandate that you cannot be punished-slash-convicted for the same offense. And I think the core mandate goes to the question of whether there was an authorization for punishment. I think D-2 is such an authorization because it speaks to the sentence. I think that Petitioner's argument on D-2 is just another variation in his magic words requirement. He is saying that not only must Congress say punishment is in addition to, but it must say a conviction is in addition to. And I don't see any basis for that requirement in this Court's precedent. The last thing I would say on this point — Well, you said you had three responses, so I want to make sure you got them all out. The third response is even if you think that C-1D-2 is not dispositive on this question, it is certainly a relevant piece of data about Congress's intent. It shows that at least with respect to a large subset of the C offenders, Congress thought that there would be additional unavoidable punishment. And there's no reason to think that Congress — Additional unavoidable punishment relative to the predicate offense in C. No, Your Honor. In fact, Congress amended D-2 — Yeah. — to specifically say that it refers to any other offense, not just the predicate, in response to this Court's decision in Simpson and Busick. So Congress was — Any other offense, and the question here is whether this is the same offense. And I think that's the relevance of Laura, Your Honor, because Laura shows Congress intended these provisions not simply to create a supercharged version of C, but instead for J to stand on its own, to be a distinct offense that's subject to its own distinct penalty scheme. And so the best way, I think, to reconcile what Congress was trying to do is, as Justice Kavanaugh referenced earlier, Congress, when it enacted J, understood that it already had the consecutive sentence mandate on the books. It had enforced that multiple times and, in fact, reinforced it when this Court improperly narrowed C in Simpson and Busick. And so from Congress's perspective, I think it would have been clear that anyone who receives the J conviction would get the J penalties and the unavoidable C penalties. There are really two possibilities on the table here. One is Congress enacted J, but it intended for C to do most of the work. I think that's what I heard my friend, Ms. Brown, suggest is going to be the government's approach when these anomalies arise. It will just focus on C. But that raises the question of why would Congress go to the trouble to enact J at all? Because it was trying to bring the death penalty into play. And I think, Justice Jackson, that answer would be plausible if all Congress had done was create J-1. But, of course, Congress didn't stop at J-1. It enacted the manslaughter provisions in J-2. And with respect to J-2, the anomalies are truly anomalous. I understand, but Ms. Brown says that there was already a pre-existing set of punishments and circumstances for murder and manslaughter. And Congress, I would think, could be rationally understood to be trying to import those in a situation in which a person had committed the crime, and the crime is the C set of elements, and murder or manslaughter resulted. I actually agree with that explanation. I think what Congress is — But then why would you get two convictions under those circumstances? Because Congress created that J offense, the separate offense, in a way that is independent of C. That just begs the question. I'm suggesting it's not a separate offense. I'm saying what Congress was doing with J is just making available the penalties that exist when, with respect to the one offense, a murder or manslaughter happens, a death occurs. So then, Justice Jackson, I think I go back to the anomalies that I raised with respect to J-2, which is you have a scenario where the maximum that is authorized under J-2 for the manslaughter is 15 years or 8 years, whereas the minimum that would be required under C would be 5 years currently. But it could be much higher than that. And then, of course, with respect to the other C offenses, the machine gun, et cetera, you would have a much more significant anomaly. Now, I have heard Petitioner and the government both to concede that those are separate offenses. So I take the point that that anomaly is not quite as powerful. But I think that, ultimately, it shows that Congress wanted these offenses to punish the full gravity of the harm committed by someone who carries a gun during a violent crime and then uses that gun to commit a killing. And I want to be clear, the consequence of this position is not that every single defendant will receive cumulative punishment. I agree that it is ultimately up to the sentencing court to decide what the appropriate punishment is. And there may be cases where a cumulative sentence is not appropriate. The question is, did Congress and the Constitution bar district courts from determining that in some circumstances, cumulative punishment was warranted? And I think based on the text, structure, and history, for all the reasons we've said, there is no evidence that Congress wanted that bar. What do you say to the government's point that this really isn't going to prevent them or prevent a district judge who wants to sentence heavily from sentencing heavily in cases and there's a killing. So presumably, it's going to be sentenced heavily, one would usually suspect. I think that that is right as a factual matter. I guess I would push back and say, the question is not, can district courts and prosecutors figure out a workaround? The question is, what did Congress intend? And when you look at the provisions— I agree with that on the legal analysis. You've looked at this carefully, kind of how this would play out, and it seems like a district judge, like the district judge in this case, seems to at least have an idea of 50 years in mind that nothing we're talking about here is really going to affect any of that. I think that's right. And I don't have any basis, to be clear, to question what Ms. Brown said about the practical consequences going forward. I do think this is something courts can work out. I will note, you know, Petitioner pointed out we didn't cite an example of one of these anomalies. I think the explanation for that is that prior to Laura, the government had won the Laura argument in every court of appeals except the Eleventh Circuit, which actually agrees with the position I'm advocating on double jeopardy. So you never had a situation where someone was not getting the C penalties along with the J penalties because you could merge the two offenses. Right. So the 31 years reference is really just not accurate in your view. Is that what you're saying? Exactly. And so all that really matters is post-Laura in the Second Circuit. Yeah. Okay. Exactly. But again, I'm not disputing that it is possible under the government's position to construct an appropriate sentence. My point is I don't think that's actually how Congress wanted the statutory scheme to operate. And I read this Court's precedents to suggest that is the operative question. What was Congress's intent, not simply what can the government do operationally on this? Can we take into account 3553A when assessing that? I mean, Congress was obviously legislating against the backdrop of a system in which it had already told district judges, sentencing judges, to sentence proportionally based on what happens in terms of the facts, et cetera. So in that world, the anomalies that you're identifying maybe Congress wasn't worried about because it had already instructed the Court to make sure that the penalties in a situation like this are higher. I think that would be plausible if all Congress had done was adopt J-1, the murder provision, because those are the sort of anomalies that a district court could work out. If you have a situation like the J-2 penalties where you have a floor that is very low and a ceiling under the other statute that's very high, that is not something a district court could really reconcile. But I take the point that 3553A certainly was operating in the background. And the Second Circuit noted that in the ordinary course, of course, a district court is going to take account of the C penalty in fashioning the J remedy. I think that's certainly appropriate for the Court to do. I'd like to turn just briefly to the precedent and the question of the status of Blockburger. So Justice Gorsuch, I actually read this Court's cases to suggest that Blockburger is not a substantive canon. It is more of a linguistic canon, to borrow a phrase from Justice Barrett. It is a tool of statutory construction that the Court applies to determine Congress's intent, but it is ultimately just a proxy for Congress's intent. And so Blockburger yields in the face of clear evidence of a congressional intent to authorize cumulative punishment. I still think that we need some account why we have that canon in this context, but no others. I agree. I think many others. I mean, there has to be an account, right? Why? I agree. I think that that is an area of this Court's double jeopardy precedence that's under-theorized. There was a pretty robust debate about the status of Blockburger with respect to cumulative punishment, in particular in the 80s, in cases like Ball and Garrett and Albernaz. And I don't know that the Court landed at any sort of satisfactory – And Hunter just said it. And that's what we've been doing ever since. But we also said the opposite in Shiro and Pierce. So – I don't have any particular dog in that fight. I didn't think – that's why I wasn't going to bother you with it, but you brought it up, counsel. Oh, Your Honor, I brought it up simply because – You put the dog in the fight, I think, this time. Well, let me defend the dog. I reference that because I do think that it is a strong indication that Petitioner cannot be right in the suggestion that Congress really does have to use the words, in addition to. Text is one part of the analysis that this Court has performed in double jeopardy cases, but it is not the entirety of the analysis. Courts look to things like statutory structure and history and purpose. And I think if you look to that evidence in this case, it suggests an intent for cumulative punishment. Well, isn't the answer – isn't part of the answer that if you don't have Blockburger, you have the vexing question of defining what is an offense for double jeopardy purposes? And that could be defined more narrowly than Blockburger, or it could be defined more broadly than Blockburger. I think that's right, and I don't mean to suggest that Blockburger is not useful. It's particularly useful in cases like Ball, where Congress is essentially using different words to focus on and criminalize the same act. But in cases like this one, or like in Garrett, where you have a compound predicate offense, I think Blockburger becomes less useful. Justice Rehnquist wrote a number of opinions expressing that view. The government endorsed it in Garrett. And I think it remains true that Blockburger, in such cases, can sometimes obscure what Congress intended rather than clarify. Justice Thomas, any further? Justice Alito?  Justice Gorsuch? Justice Kavanaugh? Mr. Baird? Justice Jackson? Thank you, Counsel. Thank you, Your Honor. Rebuttal? Mr. Larson? Thank you, Mr. Chief Justice. Just a couple of points to clarify. Rutledge and Ball make very clear you cannot impose two convictions if we have a double jeopardy problem here. It's not just about the sentence. And if you can impose two convictions, then we don't get to C1D2 about how a sentence under C should run. That's a procedural instruction, not a substantive authorization to twice punish one crime. I did want to address Justice Kavanaugh's point about notwithstanding. This language was in the statute in Rutledge. The drug statute in Rutledge said, 841, notwithstanding any other provision of law, the Court shall not suspend this sentence. Likewise, in the CCE statute, the sentence shall not be suspended. Each of those statutes said you cannot avoid a sentence. Mr. Rutledge was convicted under both of them. This Court said only one conviction can stand. There's a double jeopardy problem here, and there's no clear indication allowing double punishment. That is the situation, Your Honor. This Court has traditionally recognized that different statutes with different penalties, even minimum penalties, even ones that can't be avoided or suspended, language like this does not speak to the question here. The question is whether Congress has clearly authorized twice punishing one crime. It hasn't done so. Amicus has pointed to no text in the statute saying so. He's pointed to no history saying so. In fact, Congress specifically rejected the proposal to double punish a lethal shooting when it wrote 924J. As this Court explained in Laura, Congress decided if you're going to get sentenced to death or up to life in prison under J, we don't need to put the five years on top. There's no point in that. Congress has not authorized two punishments for the one crime here, Your Honors. This Court should reverse the judgment below. Thank you, Counsel. Mr. McCloud, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility for which we are grateful. The case is submitted.